## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHILLIP E. ODOM
   and
JENNIFER ODOM, his wife,

     Plaintiffs,

       v.

BOROUGH OF TAYLOR, ET AL.,

     Defendants.

CIVIL ACTION NO. 3:05-CV-0341

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court is Defendants Officer John Harrison, Officer Cord Mickavicz, and Borough of Taylor Chief of Police Stephen Derenick's (collectively "Taylor Defendants") Motion for Summary Judgment (Doc. 42), Defendants Borough of Old Forge, Borough of Old Forge Police Department, Officer Jason Dubernas, Officer Thomas Lutkowski, and Borough of Old Forge Chief of Police Frank J. Avvisato's (collectively "Old Forge Defendants") Motion for Summary Judgment (Doc. 50), and Defendants Borough of Moosic, Borough of Moosic Police Department, Officer James Waters, and Borough of Moosic Chief of Police Charles Maurer's (collectively "Moosic Defendants") Motion for Summary Judgment (Doc. 44), as to Plaintiffs Phillip ("Plaintiff") and Jennifer Odom's (collectively "Plaintiffs") Complaint (Doc. 2).  For the reasons set forth below, Defendants' motions will be granted in part and denied in part.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

1

**BACKGROUND**

The facts presented in the summary judgment record, viewed in the light most favorable to Plaintiffs, are as follows.  Plaintiff Phillip Odom, an adult African-American male, was the Director of Youth Enrichment with the Scranton School District (Pl.'s Dep. 13:14-14:2, Dec. 1, 2005.)  In connection with this position, Plaintiff worked with the Lackawanna County District Attorney's Office and the Scranton School District as a counselor and advocate for at-risk children and adults. (Pl.'s Dep. 14:17-16:16.)  On the evening of February 22, 2003, Plaintiff's nephew, Devon Odom, then sixteen (16) years of age, went to Pettinato's, an underage night club in Taylor, Pennsylvania, with his friends Stephon Draper, Marvin McCloe and Lacey Johnson. (Pl.'s Br. 2; Draper Dep. 8:12-14, Jan. 26, 2006.)  On this evening, Pettinato's clientele was eighty (80) to ninety (90) percent African-American. (Harrison Dep. 24:6, Dec. 12, 2005.)  While at Pettinato's, a fight erupted between students of West Scranton and students of Scranton High Schools. *Id.*  The owner of Pettinato's closed the night club, displacing the seventy (70) to one hundred (100) teenagers who were present at the time out into the parking lot. (Doc. 43 ¶ 2.)

As a result of the disturbance, a radio call requesting assistance was received by Defendant Taylor Police Officers John Harrison and Cord Mickavicz. (Doc. 43 ¶ 3.)  Upon arriving at the scene, Harrison and Mickavicz spoke with the owner of Pettinato's, who asked that the crowd of teenagers in his parking lot be dispersed. (Harrison Dep. 24:14-18.)  While Harrison and Mickavicz were dispersing the crowd, white teenagers began exiting the pool hall that was located next door to Pettinato's. (Harrison Dep. 24:18-25-16.)  These teenagers then began heckling and yelling at the Pettinato's crowd, calling

2

them names. (Harrison Dep. 24:22-24.)  Eventually, the yelling and name calling

escalated into fighting. (Doc. 60 ¶ 2.)  In need of additional officers, Harrison and

Mickavicz called for assistance from Moosic and Old Forge Police Departments.

(Harrison Dep. 25:1-3.)  Old Forge Police Officers Jason Dubernas, Thomas Lutkowski

and Thomas Callaghan, as well as two Moosic Police Officers, one of which being James

Waters, were then dispatched to assist Harrison and Mickavicz in controlling the crowds.

(Doc. 50-2 ¶ 1; Doc. 45 ¶ 6.)  After these additional officers arrived, Harrison and

Mickavicz took two African-American teenagers into custody for disorderly conduct and

returned to the Borough of Taylor Police Department, leaving the responsibility of

dispersing the crowd in the hands of the Old Forge and Moosic officers. (Pl.'s Br. 2.)

Eventually, the crowd was dispersed and the officers left the scene. (Doc. 60 ¶ 2.)

Sometime after leaving Pettinato's, Devon Odom called Plaintiff for a ride home.

(Doc. 43 ¶ 4.)  While Devon Odom and his friends were waiting to be picked up by

Plaintiff, several white teenagers in a white car pulled up and started yelling racial slurs at

them. (D. Odom Dep. 9:9-13, Jan. 26, 2006.)  The white teenagers then got out of the car

and began fighting with Devon Odom and his friends. (Draper Dep. 8:18-19; D. Odom

Dep. 9:14-10:15.)  After about fifteen (15) minutes, the fight was broken up when

additional friends of Devon Odom came from a nearby grocery store. (D. Odom Dep.

10:12-14.)  At this point, Officers Dubernas, Lutkowski and Callaghan arrived on the

scene for the second time. (Pl.'s Br. 3.)  Apparently, Officer Waters was also present.

(Pl.'s Br. 3.)  Devon Odom and his friends then described to the officers the fight with the

white teenagers. (D. Odom Dep. 12:7-9.)

Around this time, Plaintiff arrived to pick up Devon Odom and his friends. (D.

3

Odom Dep. 15:2-3.)  According to Plaintiff, when he arrived, his nephew was "making threats [of revenge], [and was] highly upset." (Pl.'s Dep. 40:10-24.)  Plaintiff then recognized Officer Callaghan from Plaintiff's work in the Lackawanna County Courthouse. (Pl.'s Br. 3.)  Plaintiff and Callaghan spoke to each other and then Callaghan introduced Plaintiff to Officers Dubernas, Lutkowski and Waters, explaining to them that Plaintiff worked for the Lackawanna County court system. (Doc. 50-2 ¶ 5.)

Shortly thereafter, the white car carrying the white teenagers, with whom Devon Odom and his friends had fought, drove by. (Doc. 59 ¶ 7.)  Devon Odom and his friends identified the car and the teenagers as the ones with whom they had fought. (Lutkowski Dep. 26:6-9, Dec. 12, 2005.)  Officers Callaghan and Waters pursued the white car, arrested the three white teenagers, handcuffed them, and brought them to the Borough of Taylor Police Station. (Lutkowski Dep. 26:9-16; Doc. 43 ¶ 9.)  Plaintiff was advised that if his nephew wished to file charges against the white teenagers, he would need to go to the Borough of Taylor Police Department to fill out report. (Doc. 43 ¶ 10; Pl.'s Br. 4.)  Plaintiff then drove Devon Odom and his friends to the Borough of Taylor Police Station. (Doc. 60 ¶ 10; Pl.'s Br. 4.)  During the drive to the police station, Plaintiff called Amy Phillips, a Lackawanna County Assistant District Attorney and friend, to inform her of the incident involving Plaintiff's nephew. (Doc. 43 ¶ 11.)

When Plaintiff, Devon Odom, and Devon Odom's friends arrived at the Borough of Taylor Police Station, Officers Harrison, Mickavicz, Dubernas, Lutkowski, Waters and Callaghan were already present. (Pl.'s Br. 5.)  Plaintiff approached the intake window outside the police station, identifying himself as the uncle of one of the African-American teenagers who was involved in the fight outside of Pettinato's. (Doc. 59 ¶ 15.)  Officer

4

Harrison then led Plaintiff's group to the doorway and opened the door to enter the police station. (Doc. 59 ¶ 14.)  Around this time, Plaintiff again placed a call from his cellular phone to Amy Phillips. (Pl.'s Dep. 50:6.)

Upon entering the police station, Plaintiff observed the three white teenagers who were involved in the altercation with Devon Odom and his friends in handcuffs and seated in chairs. (Doc. 59 ¶ 17; Pl.'s Dep. 53:21.)  What happened thereafter is unclear, but, Plaintiff agrees, there was yelling and name-calling, and some type of confrontation, between Devon Odom and his friends and the white teenagers. (Pl.'s Dep. 54:5-23; Draper Dep. 10:20-11:1; D. Odom Dep. 20:7-21:9; Doc. 43 ¶ 19; Doc. 59 ¶ 19.)  Plaintiff also stated that he approached one of the white teenagers and told him "son, I'm going to advise you to sit down, you are in a lot of trouble, you assaulted some kids . . . [and] I advise you to keep quiet." (Pl.'s Dep. 53:25-54:4.)  Officer Harrison then directed Devon Odom and his friends to a side room so as to separate the two groups of teenagers. (Pl.'s Dep. 54:12-55:13.)  Plaintiff and Defendants dispute whether Harrison also directed Plaintiff to accompany his nephew's group to the side room. (Pl.'s Dep. 57:18-19; Doc. 52 ¶ 24.)  Notwithstanding the order, Plaintiff tried to walk past Harrison toward the back of the station where Officer Callaghan was located. (Pl.'s Dep. 57:9-12.)  At this time, Harrison told Plaintiff to go to the room to which his nephew's group had been sent. (Pl.'s Dep. 57:12-13.)  Harrison then grabbed Plaintiff's right shoulder, at which point Plaintiff spun around with his hand extended, and said "what the hell." (Pl.'s Dep. 62:4-10, 64:18-19.)  Defendants contend that Plaintiff's swinging of his extended hand was an attempt to strike Harrison. (Doc. 50-2 ¶ 19; Doc. 52 ¶¶ 31-32; Doc. 43 ¶ 28; Doc. 45 ¶ 10.)  Plaintiff asserts that Harrison's action of grabbing Plaintiff's shoulder caused him to spin around.

(Pl.'s Dep. 62:13-15.)  Plaintiff also stated, at the time he was grabbed, that "this is some racist bullshit." (Doc. 54-9  p.89 ¶ 16-17.)  Another police officer, either Dubernas, Mickavicz or Waters, then stated that Plaintiff "just threw a punch" at Harrison. (Pl.'s Dep. 63:10.)  Plaintiff responded, "you are a mother fucking liar." (Pl.'s Dep. 63:24-25, 64:20-22.)  According to Plaintiff, at that point Officer Harrison rushed him from behind and slammed him into the wall. (Pl.'s Dep. 64:24-25.)  A struggle ensued and Officers Lutkowski, Waters, Mickavicz and Dubernas joined in. (Pl.'s Dep. 66:25-68:17.)  During the melee, the officers tried to grab Plaintiff's hands (Pl.'s Dep. 74:15-16), which Plaintiff kept in front of him and between his legs (Pl.'s Dep. 68: 22-23).  Defendants contend that their attempts to grab Plaintiff's hands were in an effort to handcuff Plaintiff, who was offering substantial resistance. (Doc. 52 ¶¶ 32-38; Doc. 43 ¶¶ 29-30, 34; Doc. 45 ¶¶ 12-15.)  Conversely, Plaintiff avers that he offered no resistance and was merely trying to protect himself. (Pl.'s Dep. 74:19-23.)  During the struggle, Plaintiff was sprayed with mace three times, including once after he was handcuffed and lying on the floor. (Pl.'s Dep. 72:3-79:1.)  Plaintiff was also poked in the ribs and hit in the legs with a night stick. (Pl.'s Dep. 76:3-4.)  Eventually, Plaintiff and the officers fell to the floor, and, once on the floor, the officers were able to handcuff Plaintiff. (Doc. 45 ¶¶ 14-15; Pl.'s Dep. 77:7-78:24.)  Plaintiff also testified during his deposition that after he was handcuffed and lying on the floor, an "officer came and jumped on the back of my neck." (Pl.'s Dep. 78:25-79:1.)  Plaintiff was then taken to a holding cell. (Pl.'s Dep. 81:7-8.)  Thereafter, Plaintiff received medical assistance concerning his being maced. (Pl.'s Dep. 83:11-85:15.)

The Borough of Taylor filed a criminal complaint against Plaintiff in the Lackawanna County Court of Common Pleas, charging Plaintiff with simple assault, resisting arrest and disorderly conduct. (Doc. 54-9 p.4 ¶ 16-18.)  Plaintiff was found guilty of the summary offense of disorderly conduct and fined one hundred dollars ($100) and

court costs. (Doc. 54-9 p. 114 ¶¶ 7-16.)  The simple assault and resisting arrest charges were dismissed. *Id.*

On February 17, 2005, Plaintiffs filed a Complaint in this Court. (Doc. 1-1.)  Plaintiff alleged that he was deprived his Fourth, Fifth and Fourteenth Amendment rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1985(3) (Counts I, VI-XI). (Doc. 1-1 ¶¶ 38-53.)  Plaintiff also asserted state law claims of assault and battery (Count II), false imprisonment (Count III), intentional infliction of emotional distress (Count IV), negligence (Count V), and malicious prosecution (Count XII). (Doc. 1-1 ¶¶ 54-73, 131-137.)  Plaintiff's wife, Jennifer Odom, also brought a state law claim for loss of consortium. (Doc. 1-1 ¶¶ 138-139.)  On April 25, 2005, Taylor Defendants moved to dismiss Plaintiffs' Complaint. (Doc. 10.)  On February 21, 2006, this Court granted in part and denied in part Taylor Defendants' motion, dismissing all claims against the Borough of Taylor Police Department, all claims against Taylor Defendants in their official capacities, Plaintiffs' section 1985(3) conspiracy claims against Taylor Defendants, Plaintiffs' Fifth Amendment claims against Taylor Defendants, Plaintiffs' section 1983 claims against the Borough of Taylor, and Plaintiffs' state law negligence claims against the Borough of Taylor. (Doc. 29.)  On May 16, 2006, the remaining defendants filed motions for summary judgment as to Plaintiffs' Complaint. (Docs. 42, 44, 50.)  These motions are fully briefed and ripe for disposition.

**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

(1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. Claims against the Moosic and Old Forge Police Departments

Defendants argue that the Moosic and Old Forge Police Departments are not proper parties to this action because they are agencies of the Boroughs of Moosic and Old Forge, respectively.  The Court agrees.  Police departments cannot be sued in conjunction with municipalities, as a police department is merely an administrative arm of the local municipality and is not a separate judicial entity. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26 n. 4 (3d Cir. 1997); *Irvin v. Borough of Darby*, 937 F. Supp. 446, 450 (E.D. Pa. 1996).  Consequently, the Court will grant summary judgment in favor of Defendants Borough of Moosic Police Department and Borough of Old Forge Police Department as to all of Plaintiffs' claims.

### II. Official Capacity Claims

Plaintiffs' assert claims against Old Forge Police Officers Jason Dubernas and Thomas Lutkowski, Old Forge Police Chief Frank J. Avvisato, Moosic Police Officer James Waters, and Moosic Police Chief Charles Maurer in their individual and official capacities.  Defendants seek summary judgment as to Plaintiffs' official capacity claims as they are "in all respects other than name" a suit against the municipalities themselves. *Ky. v. Graham*, 473 U.S. 159, 166 (1985).  The Court agrees.  Therefore, the Court will grant Defendants' motion for summary judgment as to Plaintiffs' official capacity claims against Old Forge Police Officers Jason Dubernas and Thomas Lutkowski, Old Forge Police Chief Frank J. Avvisato, Moosic Police Officer James Waters, and Moosic Police

Chief Charles Maurer.

### III. Section 1985 Claims

Section 1985 provides a plaintiff with a cause of action where two or more persons conspire to deprive the plaintiff of his civil rights. 42 U.S.C. § 1985(3).  For a plaintiff to establish a claim under the civil rights conspiracy statute, he must show: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Ridgewood Bd. of Educ. v. N.E. ex rel M.E.*, 172 F.3d 238, 253-54 (3d Cir. 1999) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)); *see also Griffen v. Breckenridge*, 403 U.S. 88, 102 (1971).  Thus, a claim under section 1985(3) requires that there be "some racial, or perhaps other class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 834 (1983).

Old Forge and Moosic Defendants argue that Plaintiffs have failed to even allege a conspiracy, let alone present sufficient evidence to survive their motion for summary judgment.  The Court agrees.  Plaintiff has failed to present evidence to create a genuine issue of material fact as to the existence of a conspiracy.  Specifically, there is no evidence in the summary judgment record tending to show an agreement and concerted action among the Old Forge and Moosic officers to deprive Plaintiffs of their federal rights based on a racially discriminatory animus.  Plaintiff's conclusory allegations of conspiracy and racial animus, without any factual support, are not sufficient to survive summary

10

judgment.  Accordingly, the Court will grant summary judgment in favor of the Old Forge and Moosic Defendants as to Plaintiffs' section 1985 claims.

**IV. Section 1983 Municipal Liability - Old Forge and Moosic Boroughs**

For a municipality or other government entity to be liable under section 1983, a plaintiff must establish: (1) a deprivation of a constitutionally protected right; (2) resulting from a policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691-94 (1978).  "Policy is made by an official statement of a 'decisionmaker possessing final authority to establish municipal policy,' and custom can be shown by the presence of a course of conduct that 'is so well-settled and permanent as virtually to constitute law.'" *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 Fed. Appx. 507, 509 (3d Cir. 2005) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)) (internal quotations omitted).  A municipality's failure to properly train its employees and officers can constitute a "policy" that is actionable under section 1983 only when that failure amounts to a deliberate indifference to the rights of the impacted person. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).  This does not mean that liability for failure to train can be predicated solely upon a showing that a municipality's employees could have been better trained or that additional training was available which would have reduce the overall risk of constitutional injury. *Canty v. City of Phila.*, 99 F. Supp. 2d 576, 581 (E.D. Pa. 2000) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029-30 (3d Cir. 1991)).  Rather, there must be a deliberate or conscious choice by the municipality to not train its employees before it may be held liable under section 1983. *Reitz*, 125 F.3d at 145.  Further, evidence of an isolated incident is not

sufficient to show the existence of a custom or policy. *See, e.g., Jones by & Through Jones v. Berwick Area Sch. Dist.*, No. 94-1818, 1995 U.S. Dist. LEXIS 21164, at *8 (M.D. Pa. March 13, 1995); *see also Losch v. Borough of Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984) ("[a] policy cannot ordinarily be inferred from a single instance of illegality"). Isolated violations are not the persistent, often repeated, constant violations that constitute a custom or policy. *Jones*, 1995 U.S. Dist. LEXIS, at *8.  In addition, there must be a direct causal link between the policy or custom and the alleged constitutional violation. *Chernavsky*, 136 Fed. Appx. at 509.

Here, Plaintiffs allege that the Boroughs of Old Forge and Moosic "failed to train [their] municipal agents, servants and/or employees who caused the plaintiff's injuries on February 22, 2003, which conduct constitutes an official policy, custom and practice" of the Boroughs of Old Forge and Moosic, and their respective police departments. However, Plaintiffs have failed to present any evidence as to how "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *See, e.g., Canty*, 99 F. Supp. 2d at 581.  A single, isolated incident involving only two officers in the case of Old Forge, and only a single officer from the Moosic Police Department, is insufficient to create a genuine issue of material fact as to the existence of a policy, practice or custom within the Borough of Old Forge or Borough of Moosic Police Departments.  As such, the Court will grant summary judgment in favor of the Borough of Old Forge and the Borough of Moosic as to Plaintiffs' section

1983 claims.

**V. Section 1983 Claims against Chiefs of Police Stephen Derenick, Frank J. Avvisato and Charles Maurer**

In order to be liable under section 1983 as a supervisor, the defendant must have personal involvement in the alleged wrongdoing. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  "Supervisory liability cannot be based solely upon the doctrine of respondeat superior." *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990). However, "[a] supervising authority may be liable under [section] 1983 for failing to train [or supervise] police officers when the failure to train [or supervise] demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact." *Gilles v. Davis*, 427 F.3d 197, 207 n. 7 (3d Cir. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  To establish liability pursuant to a failure-to-train or failure-to-supervise theory, a plaintiff "must identify a failure to provide specific training [or supervision] that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training [or supervision] can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145.  "Findings of deliberate indifference, as a matter of law, require that there be a history of unconstitutional behavior by municipal employees.  The Supreme Court has found that municipal liability for failure to train under [section] 1983 cannot be inferred from a single instance of police misconduct by a non-policy making employee." *Labo v. Borger*, Civ. A. No. 02-3975, 2005 U.S. Dist. LEXIS 17176, at *14 (D.N.J. Aug. 15, 2005) (citing *City of Okla. v. Tuttle*, 471 U.S. 808, 813 (1985); *City of*

*Canton*, 489 U.S. at 397 (a jury cannot infer "deliberate indifference" on the part of the trainer or supervisor from a single incident of police misconduct)).  Additionally, a public official may be held responsible under section 1983 for failure to supervise if a plaintiff shows either (1) the supervisor had contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, or (2) circumstances existed under which the supervisor's inaction could be found to have communicated a message of approval. *Bonenberger*, 132 F.3d at 25 (quoting *Colburn*, 838 F.2d at 673).

Here, Plaintiffs' entire argument for supervisor liability rests on a single instance of alleged police misconduct by non-policymaking police officers.  Plaintiff has failed to demonstrate that Police Chiefs Derenick, Avvisato or Maurer were personally involved in the alleged wrongdoing, had contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, or that circumstances were present under which they could have communicated a message of approval.  As a matter of law, then, deliberate indifference on the part of Chiefs of Police Stephen Derenick, Frank J. Avvisato and Charles Maurer cannot be inferred.  Accordingly, the Court will grant summary judgment in favor of Defendants Stephen Derenick, Frank J. Avvisato and Charles Maurer as to Plaintiffs' section 1983 and section 1983 supervisor liability claims.

**VI. Section 1983 Claims against Officers John Harrison, Cord Mickavicz, Jason Dubernas, Thomas Lutkowski and James Waters**

Section 1983 provides a private cause of action against any person who, acting under color of state law, deprives another or rights, privileges or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.  The statute, by itself,

does not create any substantive rights but rather provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  In order to establish a section 1983 claim, a plaintiff must show: (1) the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or federal law; and (2) the conduct complained of was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003).

## A. Fourth / Fourteenth Amendment[1] - Excessive Force

### 1. Plaintiff's Excessive Force Claim

A police officer may use a reasonable degree of physical force to effectuate an arrest. *Graham*, 490 U.S. at 386.  To establish a claim for excessive force as an unreasonable seizure under the Fourth Amendment, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)).  The reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tenn. v. Garner*, 471 U.S. 1, 8-9 (1985)).  "Other factors include 'the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest,

---

[1]Plaintiff's Fifth Amendment due process claims are subsumed within his Fourteenth Amendment claims, as it is only through the Fourteenth Amendment that the Fifth Amendment is applicable to the States. *See, e.g., Chavez v. Martinez*, 538 U.S. 760, 780 n.1 (2003).  As such, Plaintiffs' claims are technically Fourteenth Amendment claims and the Court will analyze them as such.

the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).  The Court must take into consideration "the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.*  "Reasonableness under the Fourth Amendment should frequently remain a question for the jury, however, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the Plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (quoting *Abraham*, 183 F.3d at 290).

For the purposes of this motion, the Court is required to accept Plaintiff's version of the incident.  Under the circumstances as Plaintiff portrays them – being grabbed and forcefully spun around, slammed into the wall, hit in the ribs and legs with a night stick, sprayed with mace on three occasions, including once while handcuffed and lying on the floor, and then jumped on the neck after being handcuffed – the Court cannot conclude as a matter of law that excessive force was not used.  The Court notes that, based on the facts presented by Plaintiff, nothing suggested to Defendant officers that Plaintiff was armed or that he posed an immediate threat to the safety of others.  Plaintiff was also

16

inside a police station and outnumbered by at least a five (5) to one (1) margin by

Defendant officers.  Particularly troublesome is the alleged spraying of Plaintiff with mace

and the jumping on Plaintiff's neck after he was handcuffed and lying on the floor.  If

proven at trial, a jury could find that these acts constituted excessive force.

Consequently, the Court will deny Defendant officers' motions for summary judgment as

to the substance of Plaintiffs' section 1983 excessive force claim.

### 2. Qualified Immunity

The doctrine of qualified immunity provides "government officials performing

discretionary functions . . . [a shield] from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When applicable, qualified immunity is not only a defense to liability, but immunity from

suit altogether, shielding officials from the burdens of discovery and costs of trial. *Mitchell*

*v. Forsyth*, 472 U.S. 511, 526 (1985).  A defendant bears the burden of establishing that

he is entitled to qualified immunity. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.

15 (3d Cir. 2001).  In answering the question of whether a particular defendant is entitled

to qualified immunity, the Court must first determine whether a constitutional violation has

occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court must then resolve the

issue of whether the constitutional right was clearly established at the time of the alleged

violation. *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." *Id.* at 202.  Qualified immunity is an objective

question to be decided by the Court as a matter of law. *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).  Further, the United States Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002).  Indeed, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  However, a decision on the issue of qualified immunity would "be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Wright v. City of Phila.*, 409 F.3d 595, 599 (3d Cir. 2005) (quoting *Curley*, 298 F.3d at 278).

Here, viewing the facts in the light most favorable to Plaintiff, as the Court must on Defendants' motions for summary judgment, the Court finds that Defendant officers' alleged conduct – slamming Plaintiff into a wall, hitting him in the ribs and legs with a night stick, spraying Plaintiff with mace on three occasions including once while he was handcuffed and lying on the floor, and then jumping on Plaintiff's neck after he was handcuffed and subdued – could be construed as violating constitutional rights of which a reasonable person would have known, namely, the right to be free from the use of excessive force in effectuating an arrest.  Thus, it is for the jury to resolve the "disputed historical facts material to the qualified immunity question." *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004).  Accordingly, based on the disputed material facts presented here, the Court cannot hold as a matter of law that Defendants Harrison, Mickavicz, Dubernas, Lutkowski and Waters are entitled to qualified immunity. Therefore, their respective motions for summary judgment as to Plaintiffs' section 1983

excessive force claim will be denied.

### B. Fourth / Fourteenth Amendment - Unlawful Arrest[2]

The Fourth Amendment, applicable to the States via the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), proscribes unreasonable searches and seizures. U.S. CONST. amend. IV.  Arrests made by police officers are "seizures" within the meaning of the Fourth Amendment. *See Terry*, 392 U.S. at 16 ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person").  A warrantless public arrest does not violate the Fourth or Fourteenth Amendments when the officer has probable cause to believe a crime has been committed. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also U.S. v. Watson*, 423 U.S. 411, 422-24 (1976).  Here, Plaintiff does not dispute that he was arrested in a public place – that is, the Borough of Taylor Police Station.  However, Plaintiff appears to argue that his arrest was made without probable cause and was thus unlawful.

Within the Third Circuit, it is well established that "the existence of probable cause in a [s]ection 1983 action is a question of fact" and therefore is to be decided by a jury. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995).  As such, it would appear that summary judgment on Plaintiff's unlawful arrest claim is inappropriate.

-----

[2]To the extent Plaintiffs' Complaint alleges a Fourteenth Amendment due process violation based on a deprivation of liberty, the Court notes that the Fourth Amendment standards for arrests and seizures are incorporated into the meaning of "liberty" in the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), and, therefore, due process requires that arrests without prior judicial approval, such as the one at issue here, be based on probable cause, *see United States v. Watson*, 423 U.S. 411 (1976). *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 840 n. 10 (E.D. Pa. 2000).  Therefore, Plaintiff has not alleged anything different than his Fourth and Fourteenth Amendment right to be free from unlawful arrest. *See id.*

However, under the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), a plaintiff is precluded from bringing a section 1983 action if a judgment in the plaintiff's favor would necessarily imply the invalidity of his conviction. Indeed, the Court of Appeals for the Third Circuit has held that a plaintiff's claim for unlawful arrest cannot accrue until the conviction is overturned or otherwise invalidated. *See Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 451-52 (3d Cir. 2005) (plaintiff's claims for illegal search and seizure and resulting false arrest and false imprisonment did not accrue until the plaintiff's conviction was overturned).

Here, Plaintiff's unlawful arrest claim would necessarily call into question the validity of the Lackawanna County Court of Common Pleas' finding of guilt and imposition of a monetary fine as to the charge of disorderly conduct.  Therefore, Plaintiff's section 1983 claim of unlawful arrest is barred under *Heck*.  Consequently, the Court will grant summary judgment as to Plaintiff's section 1983 unlawful arrest claims against Defendant officers.[3]

## VII. State law claims

Under the Political Subdivision Tort Claims Act (PSTCA), 42 PA. CONS. STAT. ANN. § 8541 *et seq*., no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or

---

[3]The Court also notes that even if *Heck* did not bar Plaintiff's section 1983 unlawful arrest claim, the finding of guilt by the Lackawanna County Court of Common Pleas is affirmative evidence of probable cause sufficient to defeat Plaintiff's claims for false arrest under section 1983. *See Gatter v. Zappile*, 67 F. Supp. 2d 515, 519 (E.D. Pa. 1999), *aff'd*, 225 F.3d 648 (3d Cir. 2000) (a grand jury indictment is affirmative evidence of probable cause sufficient to defeat claims for malicious prosectuion and false arrest under section 1983); *see also Hamidian v. Occulto*, 854 F. Supp. 350, 354-55 (M.D. Pa. 1994) (guilty finding by Court of Common Pleas, Lackawanna County, conclusively established the existence of probable cause).

any other person. *Id.* A local agency includes any government unit other than the Commonwealth of Pennsylvania. 42 PA. CONS. STAT. ANN. § 8501. An employee of a local agency is liable only to the same extent as his employing local agency. 42 PA. CONS. STAT. ANN. § 8545. Immunity under the PSTCA is subject to two limitations. First, the PSTCA allows tort recovery for negligent acts falling within eight enumerated categories. 42 PA. CONS. STAT. ANN. § 8542(b) (allowing tort recovery for negligent acts involving vehicles, personal and real property, trees, traffic controls and street lighting, utility service facilities, streets, sidewalks, and animals). Second, individual employees are not immune from liability when their conduct amounts to actual fraud, crime, actual malice or willful misconduct. *See* 42 PA. CONS. STAT. ANN. § 8550.

Here, Plaintiffs' assert a state law claim based on negligence (Count V), as well as state law claims for the intentional torts of assault and battery (Count II), false imprisonment (Count III), intentional infliction of emotional distress (Count IV), malicious prosecution (Count XII) and loss of consortium (Count XIII).

### A. Boroughs of Old Forge and Moosic

As stated above, under the PSTCA, municipal entities enjoy absolute immunity from tort liability, 42 PA. CONS. STAT. ANN. § 8541, subject to the eight aforementioned exceptions, 42 PA. CONS. STAT. ANN. § 8542(b). Here, none of the aforementioned exceptions apply to Plaintiffs' claims which are based on Defendants' law enforcement activity. *See Talley v. Troutman*, Civ. A. No. 96-5190, 1997 WL 135705, at *6 (E.D. Pa. Mar. 13, 1997). Thus, Defendant Boroughs of Old Forge and Moosic are entitled to summary judgment as to Plaintiffs' state law claims.

## B. Defendant Officers and Chiefs of Police

### 1. Negligence (Count V)

Defendant Officers and Chiefs of Police are entitled to immunity under the PSTCA as to Plaintiffs' state law negligence claims.  By definition, negligent acts do not include "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. ANN. § 8542(a)(2); *Agresta v. City of Phila.*, 694 F. Supp. 117, 123 (E.D. Pa. 1988).  Therefore, the Court will grant summary judgment in favor of Defendants Harrison, Mickavicz, Derenick, Dubernas, Lutkowski, Avvisato, Waters and Maurer as to Plaintiff's state law negligence claim (Count V).

### 2. Assault and Battery (Count II)

In Pennsylvania, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  In *Renk*, a case involving an allegation of assault and battery by a police officer, the Supreme Court of Pennsylvania explained that

> A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty.  In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

*Id.*  As previously outlined in Part VI. A. of the Court's opinion, issues of material fact exist as to whether Defendants used reasonable or excessive force.  Consequently, summary judgment is inappropriate with respect to Plaintiff's assault and battery claim (Count II).

### 3. False Imprisonment (Count III)

Under Pennsylvania law, the elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention. *Fagan v. Pittsburgh Terminal Coal. Corp.*, 149 A.2d 159 (1930).  "An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not." *Renk*, 641 A.2d at 293.  The issue of whether probable cause existed at the time of arrest is generally one for the jury. *Estate of Smith*, 318 F.3d at 514.  However, "a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly.'" *Id.* (quoting *Sherwood*, 113 F.3d at 401).

"[A] conviction, upon examination by a judicial officer, conclusively establishes the existence of probable cause." *Hamidian v. Occulto*, 854 F. Supp. 350, 354 (M.D. Pa. 1994 (Vanaskie, J.) (quoting *Bussard v. Neil*, 616 F. Supp. 854, 857 (M.D. Pa. 1985)). Here, the Lackawanna County Court of Common Pleas found Plaintiff guilty of the charge of disorderly conduct. (Doc. 54-9 p. 114 ¶¶ 7-16.)  As such, probable cause to "place[ ] [P]laintiff into a prison detention cell" (Doc. 1-1 ¶ 60) is conclusively established.  The Court will thus grant summary judgment in favor of Defendants as to Plaintiff's state law false imprisonment claim (Count III).

### 4. Intentional Infliction of Emotional Distress (Count IV)

In order to recover for intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) which was either intentional or reckless; and (3) which caused severe emotional distress. *Wisniewski v. Johns-Manville Corp.*, 812

F.2d 81, 85 (3d Cir. 1987) (citing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979) (en banc)).  Outrageous conduct is that which goes beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* (citing *Jones v. Nissenbaum, Rudolph, & Seidner*, 368 A.2d 770, 773 (Pa. Super. 1976) (citations omitted).

Here, viewing the record in the light most favorable to Plaintiff, Plaintiff was slammed into a wall, hit in the ribs and legs with a night stick, sprayed with mace on three occasions including once while he was handcuffed and lying on the floor, and then jumped on, again after he was handcuffed and subdued.  This conduct, if proven, is sufficient to allow a reasonable jury to find in favor of Plaintiff.  Accordingly, the Court will deny Defendants' motions for summary judgment as to Plaintiff's claim of intentional infliction of emotional distress.

### 5. Malicious Prosecution (Count XII)

In order to establish a Pennsylvania state law claim for malicious prosecution, a plaintiff must show that: (1) the defendants instituted proceedings against the plaintiff; (2) without probable cause; (3) with malice; and (4) the proceedings terminated in favor of the plaintiff. *Bradley v. Gen. Accident Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. 2001).

Plaintiff has failed to carry his burden as the nonmoving party to survive these motions for summary judgment.  First, as previously mentioned, the guilty finding by the Court of Common Pleas, Lackawanna County, as to the charge of disorderly conduct conclusively establishes the existence of probable cause to institute criminal proceedings. *See Hamidian*, 854 F. Supp. at 354; *Lynn v. Smith*, 193 F. Supp. 887, 890

(W.D. Pa. 1961) (conviction on summary proceeding before justice of the peace was conclusive on the existence of probable cause in state law action for malicious prosecution).  A consequence of the presence of probable cause is that there can be no malice on the part of Defendants in filing criminal charges against Plaintiff.  Moreover, as Plaintiff was found guilty of the offense of disorderly conduct, the proceedings did not terminate in his favor.  Accordingly, the Court will grant Defendants' motions for summary judgment as to Plaintiff's malicious prosecution claim.

### 6. Jennifer Odom's Derivative Loss of Consortium Claim (Count XIII)

In Pennsylvania, a loss of consortium means a loss of the company, society, cooperation, affection and aid of a spouse in every conjugal relation. *Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146, 1149 (Pa. 1997).  A wife who suffers a loss of consortium does not herself sustain physical injury, but, rather, damaged marital expectations as a result of the injuries her husband has sustained. *Darr Constr. Co v. Workmen's Comp. Appeal Bd.*, 715 A.2d 1075, 1080 (Pa. 1998).  Her claim is derivative – that is, dependent upon the success of the underlying claim asserted by her injured husband. *Kryeski v. Schott Glass Techs., Inc.*, 626 A.2d 595, 602 (Pa. Super. 1993).  Because several of Plaintiff Phillip Odom's underlying claims will survive summary judgment, Jennifer Odom's loss of consortium claim stemming from his injuries also survives.

**CONCLUSION**

For the reasons stated above, the Court will (1) grant summary judgment in favor of Defendants Borough of Moosic and Borough of Old Forge Police Departments as to all of Plaintiffs' claims; (2) grant summary judgment in favor of Defendant Boroughs of Taylor, Moosic and Old Forge as to all of Plaintiffs' claims; (3) grant summary judgment in favor of Chiefs of Police Stephen Derenick, Frank J. Avvisato and Charles Maurer as to Plaintiffs' section 1983 and section 1983 supervisor liability claims (Counts I, IX, X and XI); (4) grant summary judgment in favor of Defendant Officers John Harrison, Cord Mickavicz, Jason Dubernas, Thomas Lutkowski and James Waters as to Plaintiffs' section 1983 unlawful arrest claim (Count I); (5) grant summary judgment in favor of Borough of Taylor Officers John Harrison and Cord Mickavicz, and Chief of Police Stephen Derenick, as to Plaintiffs' state law malicious prosecution claim (Count XII); (6) grant summary judgment in favor of Defendant Officers Jason Dubernas, Thomas Lutkowski and James Waters, and Chiefs of Police Frank J. Avvisato and Charles Maurer, as to Plaintiffs' (a) official capacity claims, and (b) section 1985(3) civil rights conspiracy claim (Count I); and (7) grant summary judgment in favor of Defendant Officers John Harrison, Cord Mickavicz, Jason Dubernas, Thomas Lutkowski and James Waters, and Chiefs of Police Stephen Derenick, Frank J. Avvisato and Charles Maurer, as to Plaintiffs' (a) false imprisonment claim (Count III), and (b) negligence claim (Count V).

Still remaining are (1) Plaintiffs' individual capacity section 1983 excessive force claims against Defendant Officers John Harrison, Cord Mickavicz, Jason Dubernas, Thomas Lutkowski and James Waters (Count I); and (2) Plaintiffs' individual capacity

state law claims for assault and battery (Count II), intentional infliction of emotional distress (Count IV), and loss of consortium (Count XIII) against Defendant Officers John Harrison, Cord Mickavicz, Jason Dubernas, Thomas Lutkowski and James Waters, and Chiefs of Police Stephen Derenick, Frank J. Avvisato and Charles Maurer.

An appropriate Order will follow.


  October 24, 2006                                       s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                      United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PHILLIP E. ODOM
    and
JENNIFER ODOM, his wife,                CIVIL ACTION NO. 3:05-CV-0341

    Plaintiffs,

        v.                       (JUDGE CAPUTO)

BOROUGH OF TAYLOR, ET AL.,

    Defendants.

## ORDER

**NOW**, this   24th   day of October, 2006, **IT IS HEREBY ORDERED** that:

(1)    Defendants, Borough of Taylor, Officer John Harrison, Officer Cord Mickavicz, and Chief of Police Stephen Derenick's Motion for Summary Judgment (Doc. 42) is **GRANTED** as to:

        (a)    All remaining claims against Borough of Taylor;

        (b)    Plaintiffs' section 1983 (Count I) and section 1983 supervisor liability (Count IX) claims against Chief of Police Stephen Derenick;

        (c)    Plaintiffs' section 1983 unlawful arrest claim (Count I) against Officer John Harrison and Officer Cord Mickavicz;

        (d)    Plaintiffs' false imprisonment claim (Count III) against Officer John Harrison, Officer Cord Mickavicz, and Chief of Police Stephen Derenick;

        (e)    Plaintiffs' negligence claim (Count V) against Officer John Harrison, Officer Cord Mickavicz, and Chief of Police Stephen Derenick;

        (f)    Plaintiffs' state law malicious prosecution claim (Count XII) against Officer John Harrison, Officer Cord Mickavicz, and Chief of Police Stephen Derenick.

(2)     Defendants, Borough of Old Forge, Borough of Old Force Police Department, Officer Jason Dubernas, Officer Thomas Lutkowski, and Chief of Police Frank J. Avvisato's Motion for Summary Judgment (Doc. 50) is **GRANTED** as to:

        (a)     All claims against Borough of Old Forge Police Department;

        (b)     All claims against Borough of Old Forge;

        (c)     All claims against Officer Jason Dubernas, Officer Thomas Lutkowski, and Chief of Police Frank J. Avvisato in their official capacities;

        (d)     Plaintiffs' section 1983 (Count I) and section 1983 supervisor liability (Count X) claims against Chief of Police Frank J. Avvisato;

        (e)     Plaintiffs' section 1983 unlawful arrest claim (Count I) against Officer Jason Dubernas and Officer Thomas Lutkowski;

        (f)     Plaintiffs' section 1985(3) conspiracy claim (Count I) against Officer Jason Dubernas, Officer Thomas Lutkowski, and Chief of Police Frank J. Avvisato;

        (g)     Plaintiffs' false imprisonment claim (Count III) against Officer Jason Dubernas, Officer Thomas Lutkowski, and Chief of Police Frank J. Avvisato;

        (h)     Plaintiffs' negligence claim (Count V) against Officer Jason Dubernas, Officer Thomas Lutkowski, and Chief of Police Frank J. Avvisato.

(3)     Defendants, Borough of Moosic, Borough of Moosic Police Department, Officer James Waters, and Chief of Police Charles Maurer's Motion for Summary Judgment (Doc. 44) is **GRANTED** as to:

        (a)     All claims against Borough of Moosic Police Department;

        (b)     All claims against Borough of Moosic;

        (c)     All claims against Officer James Waters and Chief of Police Charles Maurer in their official capacities;

        (d)     Plaintiffs' section 1983 (Count I) and section 1983 supervisor liability (Count XI) claims against Chief of Police Charles Maurer;

(e)     Plaintiffs' section 1983 unlawful arrest claim (Count I) against Officer James Waters;

(f)     Plaintiffs' section 1985(3) conspiracy claim (Count I) against Officer James Waters and Chief of Police Charles Maurer;

(g)     Plaintiffs' false imprisonment claim (Count III) against Officer James Waters and Chief of Police Charles Maurer;

(h)     Plaintiffs' negligence claim (Count V) against Officer James Waters and Chief of Police Charles Maurer.


 s/ A. Richard Caputo
A. Richard Caputo
United States District Judge